UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
KENN ZOU *et al.*,

                      Plaintiffs,

             -against-

XIAO HAN *et al.*,

                    Defendants.
--------------------------------------------------------------------X

                                    **ORDER**

                          23-CV-02370 (JMA) (JMW)

**A P P E A R A N C E S:**

Ming Hai, Esq.
**Law Offices of Ming Hai P.C.**
36-09 Main Street, Suite 7B
Flushing, NY 11354
*Attorney for Plaintiffs and Counter Defendants Kenn Zou and Chunlan Li*

Alexander Paykin, Esq.
**The Law Office of Alexander Paykin**
The Empire State Building, 59th Floor
New York, NY 10118
*Attorney for Defendant and Counter Claimant Xiao Han*

Mingyuan Zhang, Esq.
Robert Hawkins, Esq.
**The Law Office of Alexander Paykin**
99 Tulip Ave, Ste. 408
Floral Park, NY 11001
*Attorneys for Defendant and Counter Claimant Xiao Han*

Carolyn Shields, Esq.
Ying Liu, Esq.
**Liu & Shields LLP**
41-60 Main Street, Suite 208A
Flushing, NY 11355
*Attorneys for Defendant Jun Tang*

1

**WICKS,** Magistrate Judge:

Plaintiffs bring this RICO action against Defendants alleging a variety of misdeeds all arising out of an investment scheme.  Presently before the Court are the following applications:

(1) Defendant Jun Tang's ("Tang") application to quash or modify the non-party subpoenas or stay discovery or issue a protective order (ECF No. 45) pending a decision on her anticipated motion to dismiss the Second Amended Complaint ("SAC") for a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for a failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and to strike the diversity allegation under Fed. R. Civ. P. 12(f) (ECF Nos. 36 and 44);

(2)  Defendant Xiao Han's ("Han") motion to quash the non-party subpoena to the financial institutions (ECF No. 51);

(3) Han's motion to quash the subpoena on Alpha Law LLC and prevent Plaintiffs from using information retrieved from non-party subpoenas (ECF No. 61); and

(4) Tang's motion to quash the nonparty subpoenas on Bank of America and Alpha Law specifically (ECF No. 62).

Plaintiffs oppose all four motions.  (ECF Nos. 46, 52, 63, and 65.)

For the reasons set forth below, the Defendants' motions to quash/stay compliance with the subpoenas are all denied.  (ECF Nos. 45, 51, 61, and 62.)

## I.       BACKGROUND

On March 28, 2023, Plaintiffs commenced this suit against Defendants.  (ECF No. 1.) Plaintiffs allege that Defendants perpetrated various frauds and carried out a pattern of racketeering activity.  (ECF No. 33 at 1.)  Specifically, Defendants allegedly defrauded Plaintiffs "to come up with [a] substantial sum of funds to invest and lend to [Defendants'] family enterprise." (*Id.* ¶ 40.)  Some of the schemes that Defendants engaged in include "selling fictional luxury Condos… to overseas Chinese investors…with promises to give buyers' whole family U.S. Green Cards;" Defendants stole and invested over $1 million of Plaintiffs' money; and forged Plaintiff Zou's signature to unilaterally sell a motel owned by the parties.  (ECF No.

46 at 1.)  Plaintiffs allege that Defendants' conduct amounted to (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*. and 1962(C) and (d); (2) fraud; (3) breach of contract; (4) conversion; (5) unjust enrichment; and (6) breach of duty.  (ECF No. 33 at 56-69.)

Plaintiffs filed an Amended Complaint following motion practice (ECF No. 23), and Tang once again filed a pre-motion conference letter for her prospective motion to dismiss the newly amended complaint.  (ECF No. 25.)  Judge Azrack granted Plaintiffs' motion, allowing them to file a Second Amended Complaint ("SAC").  (Electronic Order dated Aug. 24, 2023.)

On July 7, 2023, the undersigned held an initial conference with the parties and set a discovery schedule.  (ECF No. 26.)  Since then, the undersigned has extended the time to respond to interrogatories and the request for production of documents to December 30, 2023 as well as the close of fact discovery to April 30, 2024.  (*See* ECF No. 43; Electronic Order dated Jan. 5, 2024.)

On October 7, 2023, Tang, for the third time, filed a pre-motion letter for its anticipated motion to dismiss the Second Amended Complaint filed at ECF No. 33.  (ECF No. 36.) Plaintiffs filed a cross-motion to amend the SAC for leave to file a Third Amended Complaint. (ECF No. 40.) The pre-motion conference and resulting motions to amend and dismiss were referred to the undersigned.  (Electronic Order dated Oct. 27, 2023.)  The undersigned held a pre-motion conference with the parties, whereby the parties were directed to bundle file all papers on or before February 5, 2024.  (ECF No. 44.)

Defendants then filed the instant motions to quash or modify the non-party subpoenas, addressed to Defendants' financial institutions, or stay compliance with those subpoenas or for a

protective order.  (ECF Nos. 45, 51, 61, and 62.)  Plaintiffs resist all four motions (ECF Nos. 46, 52, 63, and 65).

Defendants argue that the issues in the pending motion to dismiss, namely, whether subject matter jurisdiction exists, could be fatal to Plaintiffs' claims, since subpoenas cannot be issued without the court's jurisdiction.  (ECF No. 45; ECF No. 51 at 2; ECF No. 62.)  Tang states that the SAC is riddled with allegations unrelated to any injury to Plaintiffs, which is insufficient to demonstrate constitutional standing.  (ECF No. 45 at 2.)  Han also argues that he was only added to the case to maintain diversity jurisdiction since Tang and Plaintiff Zou are both citizens of South Carolina.  (ECF No. 51 at 2.)  Further, Tang alleges that the subpoenas are "facially defective, overbroad, invade defendant's rights of privacy and proprietary interests, and seek records that cannot yet be determined to be relevant."  (ECF No. 45.)  Tang specifically claims that some of the non-party subpoenas request sensitive business information.  (ECF No. 62 at 2.)

Plaintiffs, in turn, argue that (1) the Court has subject matter jurisdiction because the SAC alleges violations of RICO—a federal question—and therefore diversity of citizenship is not necessary and they have nonetheless sufficiently demonstrated injury; (2) it is appropriate for Plaintiffs to receive bank records from July 2015 to the present, as this period is not overbroad; (3) Plaintiffs' review of the bank account information is not a privacy violation and a protective order "for attorneys' eyes only" can be provided; and (4) there will be no undue burden or expense because the bank will produce all documents and expense it to Plaintiffs.  ((*See* ECF Nos. 46, 52.)

## II. DISCUSSION

### A. Request to Quash the Subpoena[1]

Defendants request that the Court quash the nonparty subpoenas in light of the pending dispositive motions in this case. They argue that the subpoenas are overbroad, seek irrelevant information, or would otherwise cause an undue burden. (ECF Nos. 45, 51.)

#### a. Legal Standard

"[A] valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991). Subpoenas that are validly issued and served "under Rule 45(a)(3) operate as enforceable mandates of the court on whose behalf they are served." *Freund v. Weinstein*, No. 08-cv-1469 (FB)(MDG), 2009 U.S. Dist. LEXIS 109387, at *2 (E.D.N.Y. 2009). A non-party recipient to a subpoena may serve objections within 14 days of receipt or "before the earlier of the time specified." Fed.R.Civ.P. 45(d)(2)(B).

Fed. R. Civ P. 45(d)(3)(A) governs quashing or modifying a subpoena. It states that courts must quash or modify a subpoena that:

(i)     fails to allow a reasonable time to comply;

(ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)    subjects a person to undue burden.

---

[1] Ordinarily, a party may lack standing to quash a non-party subpoena. However, the Court notes here that Tang and Han do have standing. *See Bryant v. Milhorat*, Nos. 09-CV-1751 (AKT), 09-CV-2506 (DRH) (AKT), 09-CV-1836 (ETB), 2012 U.S. Dist. LEXIS 68146, at *10 (E.D.N.Y. May 15, 2012) (stating that parties generally lack standing to move to quash non-party subpoenas except when they invoke a personal privilege or right). Specifically, Defendants here state that the subpoenas seek documents from Defendants' bank that are protected by their privacy and proprietary interests. (ECF No. 45 at 3; ECF No. 52 at 2.) Notably, Plaintiffs do not challenge Defendants' standing to file these motions.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

"A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotes omitted). As such, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Knight v. Local 25 IBEW*, No. 14-cv-6497 (DRH) (AKT), 2016 U.S. Dist. LEXIS 45920, *4 (E.D.N.Y. Mar. 31, 2016) (citation omitted). However, once relevance is demonstrated, the party opposing the subpoena must come forth and demonstrate "that the subpoena is over-broad, duplicative, or unduly burdensome." *Id*. (citation omitted). The undersigned reviews the motions to quash using this legal framework.

### b.  Relevance, Overbreadth, and Undue Burden

At the outset, the Court notes that the only ground in contention with the parties is whether the documents are relevant and whether compliance with the subpoena will cause an undue burden. Defendants argue that it is premature to determine whether the documents will be relevant to the case, given that there are pending motions to dismiss the operative complaint and the proposed third amended complaint. This point is well taken. Plaintiffs, however, imply that the nonparty subpoenas are relevant to trace Defendants' funds to further demonstrate their involvement in this RICO action. (ECF No. 52.)

Here, all of the documents requested appear be part and parcel of the alleged RICO pattern and scheme and are relevant to Plaintiffs' claims in the SAC that claim they were defrauded by Defendants. Han denies any participation in these frauds. Plaintiffs note that the documents could reveal evidence of Han's involvement in the fraud, since he received funds directly from Plaintiffs and Tang used the funds to buy luxury items such as a Cadillac with

6

illegitimate funds.  (ECF No. 52 at 2.)  Indeed, the documents that Plaintiffs *did* already obtain from the financial institutions show that Tang internally transferred large amounts of cash and wired the same amount to Han's real estate attorney, Alpha Law LLC. [2]  (ECF No. 62 at 1.) Plaintiffs therefore allege that Defendants "devised schemes not to transfer directly to Han's [bank] account, but by using [Alpha Law] as the intermediate transfer agent…their money laundering schemes would not be discovered."  (*Id*. at 1-2.)

As to whether the subpoenas are overbroad in terms of timeframe, Defendants do not argue that Plaintiffs' claims themselves are untimely; rather, they argue that the documents to be produced are outside of the four-year limitations period for a RICO claim—they state that the subpoenas request documents over a span of seven years and cover a time period "broader than the four-year time period relevant to this action."[3]  (ECF No. 45.)  Defendants allege that Han disassociated himself from the parties' company in 2018 and only had a limited interest in it prior to 2018.  (*Id*.)

However, documents predating the statute of limitations period are discoverable so long as they are relevant to claims within the statute of limitations period.  *See Conversation Law Found., Inc. v. Shell Oil Co*., No. 21-cv-00933 (JAM), 2023 U.S. Dist. LEXIS 147065 (D. Conn. Aug. 22, 2023).  The documents dated prior to the statute of limitations—that is, *at least* prior to March 2019 given this case's March 2023 start date—also make up evidence of Defendants'

---

[2] Defendants state that Plaintiffs recently sent out certain nonparty subpoenas, including to Chase Bank, Bank of America, and Alpha Law LLC, while the instant motions to quash were pending. (ECF Nos. 61 and 62.)  To the extent Defendants' motions seek any relief with respect to those nonparty subpoenas already sent, the motions are moot. *See e.g., Sali v. Zwanger & Pesiri Radiology Group,* No. 19-CV-275 (FB) (CLP), 2022 U.S. Dist. LEXIS 48699, at *43 (E.D.N.Y. Jan. 10, 2022) (denying nonparty subpoenas as moot because they have already been complied with).

[3] The "limitations period for all Civil RICO claims is four years."  *Doe v. Nat'l Ramah Comm'n, Inc*., No. 16-cv-6869 (NSR), 2018 U.S. Dist. LEXIS 153317, at *22 (S.D.N.Y. Sept. 7, 2018).

RICO pattern/scheme.  For example, the operative complaint states that from 2015 to 2023 Tang often kept cash for herself and transferred cash to Han.  (ECF No. 33 ¶ 48.)  Further, that from 2015 to 2016, Tang transferred 40% of her shares in JLK Holdings, INT, LLC[4] to Han who later sold those shares to Tang for cash in 2019 or 2020.  (*Id*. ¶ 51.)  And from 2015 until 2022, Plaintiffs also allege that Defendants devised a plan to force Plaintiff Zou's signature to sell the Carousal Motel and subsequently transferring the proceeds to themselves and their companies.  (*Id*. ¶ 52.)  These are not an exhaustive list as to why the information appears necessary for Plaintiffs to pursue their claim.

With regard to whether producing the information would cause an undue burden, Plaintiffs contend that the "banks will easily produce digital records of [Han's] banking activities for [the] past seven years and bill to the plaintiffs for the costs and expenses, as the bank has advised the plaintiffs' attorney."  (ECF No. 52 at 3.)  Thus, any argument by Han that compliance with the subpoena requires compiling and producing extensive and irrelevant financial records (ECF No. 51 at 3) is nullified by Plaintiffs' statement as there is nothing for Defendants to subpoena compliance by a non-party.

To the extent that Defendants allege that the subpoenas "invade Defendant's rights of privacy and proprietary interests" (ECF No. 45 at 2), the parties are directed to file a joint proposed confidentiality order for the Court's review.  Plaintiffs have even agreed that bank records can be categorized as those for "attorneys' eyes only" if needed.  (ECF No. 46 at 3.)

For these reasons, Defendants' motion to quash is denied given that the documents sought are relevant, not overbroad, and would not cause an undue burden.

---

[4] JLK Holdings, INT, LLC is a South Carolina Limited Liability Company that Plaintiff Kenn Zou owned.  (ECF No. 33 ¶ 9.)

**B. Request to Stay Compliance with the Subpoena[5]**

Having found that the subpoenas themselves should not be quashed, the Court next considers whether there should be a stay of compliance with the subpoena pending the disposition of the motion to dismiss.

### a. Legal Standard

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The filing of a dispositive motion in and of itself does not halt discovery obligations. That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No.CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006). Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

---

[5] The Court's consideration and analysis of the arguments set forth in the motion to dismiss is purely for purposes of weighing whether a stay should be granted. This analysis should not in any way be construed as prejudging or predicting the ultimate outcome of the motion to dismiss pending before Judge Azrack.

"Upon a showing of good cause, a district court has considerable discretion to stay discovery pursuant to Rule 26(c)." *Al Thani v. Hanke,* 20-CV-4765 (JPC), 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) (alteration in original) (quoting *Republic of Turkey v. Christies, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)).  In assessing good cause, courts look to "the particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08-CV-2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)).

### b.  Is There a Strong Showing that Plaintiff's Claims are Unmeritorious?

Here, the Court does not find "good cause" to suspend compliance with the subpoenas in light of the arguments raised Defendant's anticipated motion to dismiss.  (ECF No. 36.)

*First,* Defendants claim there is no subject matter jurisdiction because (1) Plaintiffs have failed to plead a personal injury and (2) because Han, a New York resident, was simply added as a defendant in this case to maintain diversity between the parties.  (ECF No. 51 at 2.)

Tang alleges that Plaintiffs have failed to prove an insufficient direct injury to Plaintiffs themselves as a result of the RICO violations.  (ECF No. 45 at 2.)  She states, for example, that the SAC alleges injuries to non-party tax authorities and owners of shops.  (*Id.*)

Under Article III of the Constitution, federal courts have the power to resolve cases and controversies.  U.S. Const. art. III, § 2.  When invoking federal jurisdiction, ordinarily a plaintiff must show that he has "standing to sue" thereby asserting a case or controversy under Article III. *Dhinsa v. Krueger,* 917 F.3d 70, 77 (2d Cir. 2019).  To demonstrate standing, a plaintiff must allege the following: (1) that he suffered an injury in fact; (2) that injury is fairly traceable to the defendant's conduct; and (3) the injury is likely to be redressed by a favorable decision.  *Id.* (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

However, the Second Circuit recently stated in *Goney v. SuttonPark Cap. LLC* that "[w]hether a plaintiff satisfies RICO's injury requirements bears on whether the RICO claim survives a motion to dismiss under Rule 12(b)(6), not whether the court has subject matter jurisdiction." *Goney v. SuttonPark Cap. LLC*, No. 22-1830, 2023 U.S. App. LEXIS 31376, at 3 n.1 (2d Cir. Nov. 28, 2023); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 ("RICO standing is not jurisdictional, and therefore [a] court has original jurisdiction over a RICO claim even if plaintiffs lack standing under the RICO statute.").

Here, like in *Goney*, Defendants incorrectly frame Plaintiffs' alleged failure to plead injury as a part of *constitutional* standing and therefore whether this Court has subject matter jurisdiction. However, as a threshold matter, this Court has original jurisdiction over a RICO claim, even if ultimately that claim is subject to dismissal for failure to state a claim.

Because the Court has jurisdiction to preside over RICO claims, it therefore follows that diversity between the parties is unnecessary even if the RICO claims are later dismissed. *See Weaver v. James*, No. 10-cv-6609 (NRB), 2011 U.S. Dist. LEXIS 109960, at *4 (S.D.N.Y. Sept. 27, 2011) ("Diversity of citizenship is not a prerequisite, however, to this Court's subject matter jurisdiction over civil RICO claims."). Thus, diversity would not even come into play given Plaintiff's claims.

As for Defendants' motion to dismiss itself, Defendants allege there are pleading deficiencies with respect to Plaintiffs' claims in the SAC, such as the RICO and fraud claims. (ECF No. 55.) In their opposition, Plaintiffs have responded to Defendants' arguments, stating that the operative Complaint and the newly proposed complaint satisfy the requirements of Fed. R. Civ. P. 9(b)—in other words, the fraud allegations are pled with particularity. (ECF No. 56 at

25.)  Thus, it is difficult for the Court to find at this juncture that Defendants have made a "strong showing" that Plaintiffs' claims are unmeritorious.

For the reasons stated, Plaintiffs' Complaint at first blush, appears to state meritorious claims against Defendant—having alleged various injuries as a result of Defendants' schemes.

### c.  Breadth and Burdens of Discovery and Prejudice

The second factor-- the breadth of discovery and the burden of responding to it-- disfavors a stay.  As explained above, there is no burden on Defendants to comply with the nonparty subpoenas for several years' worth of documents—all action will be taken by the banks and costs are to be incurred by Plaintiffs.  *See Nielsen Co. (US) LLC v. TVSquared LTD*, No. 23-CV-1581 (VSB), 2023 U.S. Dist. LEXIS 116211, at *6-7 (S.D.N.Y. July 6, 2023) (denying motion to stay in part because defendant failed to state "how long it expects discovery to take, the costs associated with discovery or any other indicator that might demonstrate why discovery will be overly burdensome").

Regarding prejudice, Plaintiffs aver they would suffer from a pause in discovery.  They argue that they "need the bank records for defendants' depositions; therefore there should not be any delay."  (ECF No. 46 at 3.)  Plaintiffs also claim that Defendants are attempting to conceal their wrongdoings with these motions to quash.  (*Id.*)

The undersigned extended fact discovery to April 30, 2024 on January 5, 2024.  (*See* Electronic Order dated Jan. 5, 2024.)  Therefore, there would likely be little to no prejudice to Plaintiffs given that they are not operating on as tight of a deadline as before.  Further, other aspects of discovery such as paper discovery and depositions, aside from compliance with the subpoenas, will still continue.  Thus, Plaintiffs can obtain from those avenues of discovery.

Despite the inconvenience that Plaintiffs may experience from a stay, this inconvenience is not tantamount to prejudice.  However, considering the other factors above, a stay is not warranted.  A lack of prejudice in and of itself does not mandate a stay.  "Good cause not otherwise having been shown, lack of prejudice does not justify a stay."  *See Giuffre v. Maxwell*, No. 15-cv-7433 (RWS), 2016 U.S. Dist. LEXIS 6638, at \*4-5 (S.D.N.Y. Jan. 19, 2016) (finding no unfair prejudice to plaintiff but there was not a strong showing that plaintiff's claim was unmeritorious and discovery was not significant).

### III.    CONCLUSION

Based on the foregoing, Defendants' motions to quash or stay compliance with the nonparty subpoenas (ECF Nos. 45, 51, 61, and 62) are hereby denied.  The deadline for the close of fact discovery remains April 30, 2024.  To the extent that the parties seek a protective order for the production of documents, they are to file a proposed stipulated confidentiality order with the Court for its review and consideration.

Dated: Central Islip, New York
        February 21, 2024

S O   O R D E R E D:

/s/ *James M. Wicks*

        JAMES M. WICKS
    United States Magistrate Judge