UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

KENN ZOU *et al.*,

        Plaintiffs,

    -against-

XIAO HAN *et al.*,

        Defendants.

------------------------------------------------------------------X

**ORDER**

23-CV-02370 (JMA) (JMW)

**A P P E A R A N C E S:**

Ming Hai, Esq.
**Law Offices of Ming Hai P.C.**
36-09 Main Street, Suite 7B
Flushing, NY 11354
*Attorney for Plaintiffs and Counter Defendants Kenn Zou and Chunlan Li*

Alexander Paykin, Esq.
**The Law Office of Alexander Paykin**
The Empire State Building, 59th Floor
New York, NY 10118
*Attorney for Defendant and Counter Claimant Xiao Han*

Mingyuan Zhang, Esq.
Robert Hawkins, Esq.
**The Law Office of Alexander Paykin**
99 Tulip Ave, Ste. 408
Floral Park, NY 11001
*Attorneys for Defendant Xiao Han*

Carolyn Shields, Esq.
Ying Liu, Esq.
**Liu & Shields LLP**
41-60 Main Street, Suite 208A
Flushing, NY 11355
*Attorneys for Defendant Jun Tang*

**WICKS,** Magistrate Judge:

Plaintiffs Kenn Zou and Chunlan Li commenced this action alleging that Defendants Xiao Han and Jun Tang participated in a pattern of racketeering activity in connection with the illegal transfer of Plaintiffs' ownership interest in a company called JLK Holdings, Inc., LLC and otherwise fraudulently persuading Plaintiffs to sink large sums of money into Defendant Tang's companies. (ECF No. 33.) In addition, and particularly relevant here, Plaintiffs allege that Defendants engaged in "immigration visa frauds for large legal fees and payments" as well as "tax cheats and evasions." (*Id.*) Presently before the Court are:

(1) Defendant Tang's motion to quash or modify a nonparty subpoena served or to be served on the United States Citizenship and Immigration Services ("USCIS") (ECF No. 76) and

(2) Plaintiffs' motion to "so order" a subpoena issued to H&R Block to produce the tax returns of Defendant Tang and two of Defendant's companies—Travelhome LLC and TL403 LLC (ECF No. 84).

For the reasons that follow, Defendant Tang's motion to quash is granted (ECF No. 76), and Plaintiffs' request to "so order" the H&R Block subpoena is denied (ECF No. 84).

## LEGAL FRAMEWORK

Rule 45 authorizes an attorney to sign and issue subpoenas. Fed R. Civ. P. 45(a)(3). "[A] valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991). Subpoenas that are validly issued and properly served "under Rule 45(a)(3) operate as enforceable mandates of the court on whose behalf they are served." *Freund v. Weinstein*, No. 08-cv-1469 (FB) (MDG), 2009 U.S. Dist. LEXIS 109387, at *2 (E.D.N.Y. 2009).

Fed. R. Civ P. 45(d)(3)(A) governs applications to quash or modify a subpoena. That is, courts must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

2

      (iii) *requires disclosure of privileged or other protected matter, if no exception or waiver applies*; or
      (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv) (emphasis added).

"A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotes omitted). As such, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Knight v. Local 25 IBEW*, No. 14-cv-6497 (DRH) (AKT), 2016 U.S. Dist. LEXIS 45920, *4 (E.D.N.Y. Mar. 31, 2016) (citation omitted). However, once relevance is demonstrated, the party opposing the subpoena must come forth and demonstrate "that the subpoena is over-broad, duplicative, or unduly burdensome." *Id*. (citation omitted). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293–94 (E.D.N.Y. 2011) (internal quotes omitted).

## **DISCUSSION**

### I.    **Motion to Quash USCIS Subpoena**

Defendant Tang moves pursuant to Fed. R. Civ. P. 45 to quash or modify a nonparty subpoena served or to be served by Plaintiffs upon the USCIS. (ECF No. 76.) In the alternative, if the request is denied, Defendant Tang seeks a protective order concerning the subpoena. (*Id.*)

The subpoena requests the following information from Tang:

- Any and all form I-130 petition with supporting documents filed by anybody on behalf of and for Jun Tang as a beneficiary;

- Any and all form I-140 petition with supporting documents filed by anybody/entity on behalf of and for Jun Tang as a beneficiary;

3

- Any and all form I-130 petitions with supporting documents filed by Jun Tang for her foreign relatives;

- Any and all form I-485 application with supporting documents filed by Jun Tang for Lawful Permanent Residency in the U.S.;

- Any and all form N-400 application with supporting documents filed by June Tang for Naturalization; and

- Any and all form I-290 (B) Motion/administrative Appeal with supporting documents filed by Jun Tang and the decisions on the motion/appeals.

(ECF No. 76-1 at 6.)

Defendant states that the documents are protected from disclosure by federal law, namely, 5 U.S.C. § 552a(b) (conditions of disclosure), which essentially states that no agency shall disclose a record to another person or agency unless by written request or with written consent of the individual to whom the record pertains. Here, it is undisputed that neither Defendant Tang nor any other individual authorized such disclosure of the requested documents at issue.

Defendant additionally states that (1) the documents are irrelevant to the action since there are no immigration violations alleged in this RICO case; (2) Plaintiffs lack standing to assert defects in the immigration applications; (3) the documents sought are time-barred which date back to 1996; (4) disclosing the documents would infringe on Defendant Tang's, her ex-husband's and her relatives' privacy rights; and (5) Plaintiff's attorney violated the Federal False Statements Statute or otherwise defamed Defendant by falsely accusing Defendant of committing crimes including immigration fraud and tax evasion. (ECF No. 76.)

Plaintiffs counter that the document is relevant and is even mentioned in the Complaint for the Court's review (*see, e.g.,* ECF No. 33 at ¶ 88). Further, the alleged tax evasion and immigration violations mentioned in the subpoenas are "RICO predicate acts" for the instant action. (ECF No. 78 at 2.) Regarding the False Statements Statute violations or defamation

4

allegations, Plaintiffs' counsel states that "[t]ruth is a complete defense to both accusations." (*Id.*)

Plaintiffs also point to various actions undertaken by Defendant Tang in furtherance of the alleged fraud, including Tang's: wiring of large sums of monies from South Carolina to New York to Defendant Han's attorney for him to purchase real estate; wiring or sending checks of thousands of dollars to Han directly; owning several properties allegedly acquired with illegitimate funds; forging Plaintiff Zou's signature and selling Carousal Motel and Tang's keeping the proceeds for herself; depositing proceeds into Travelhome, not JLK LLC; and borrowing money from JLK LLC for personal expenses. (ECF No. 78 at 2.) And as to the immigration fraud, Plaintiffs' attorney states that Tang's former marriage was a sham and they divorced shortly after she obtained her visa. (*Id.* at 3-4.) He states that Tang "must have lied" when asked by the USCIS whether she committed or attempted to commit a crime for which she was not arrested. (*Id.*) As such, her immigration documents would support the RICO predicate acts.

### A. Does Defendant Tang have standing to challenge the non-party Subpoena?

Before delving into the merits of the motion to quash, the Court must first analyze whether Defendant Tang has standing to bring the motion. Ordinarily, a party lacks standing to quash a non-party subpoena. However, parties may move to quash non-party subpoenas if it infringes upon a personal privilege or right of a party. *See Bryant v. Milhorat*, Nos. 09-CV-1751 (AKT), 09-CV-2506 (DRH) (AKT), 09-CV-1836 (ETB), 2012 U.S. Dist. LEXIS 68146, at *10 (E.D.N.Y. May 15, 2012). "When deciding whether a personal privilege or right exists, courts should consider whether the information itself is private, confidential, privileged, or highly sensitive." *Forsythe v. Midland Funding LLC*, No. 18-CV-03276 (ARR) (CLP), 2019 WL 245459, at *3 (E.D.N.Y. Jan. 17, 2019) (internal quotation marks, brackets, and citation omitted);

5

*see US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-CV-6811(CM) (JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (explaining that a "personal right or privilege" in the motion to quash context includes "an interest in proprietary, confidential information" or "maintaining a privilege that would be breached by disclosure") (citation omitted). Importantly, the claim of personal right or privilege "must be personal *to the movant*...." *Rodal v. Mass. Mut. Life Ins. Co.*, No. 19-CV-1960 (JMA) (AKT), 2020 WL 3448278, at *2 (E.D.N.Y. Apr. 23, 2020) (emphasis added)

      Here, Tang states, and the Court finds, that the subpoena seeks personal disclosures from various immigration applications that would infringe upon her privacy rights. (ECF No. 76 at 3.) For example, the documents solicit, *inter alia*, applicants' social security numbers, tax numbers, alien registration numbers, and passport information. Accordingly, Tang has standing to file this motion.

### B. Well then, does the Subpoena seek information relevant to the claims at issue?

      Having found that Defendant has standing to raise these issues, the undersigned next determines whether the subpoena seeks information relevant to the dispute.

      Racketeering activity includes, among others, acts indictable under sections 1341, 1343, and 1546 which relate to mail fraud, wire fraud, and "fraud and misuse of visas, permits, and other documents," respectively. 18 U.S.C. § 1961(1)(B). "Predicate acts are 'related' for RICO purposes when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sky Med. Supply Inc. v. SCS Support Claims Servs.,* 17 F. Supp. 3d 207, 225 (E.D.N.Y. 2014) (internal citations omitted). "A pattern of racketeering activity requires at least two predicate acts of racketeering activity that are related and continuous." *Boneta v. Rolex Watch*

*USA, Inc.*, 232 F. Supp. 3d 354, 358 (S.D.N.Y. 2017). "[P]redicate acts must have been committed within ten years of each other." 18 U.S.C. § 1961(5).

*First,* the requested information is irrelevant to the frauds alleged in the complaint. Defendants are accused of defrauding Plaintiffs into an investment scheme and then divesting Plaintiff Zou of all ownership rights in a company he owned. (*See generally* ECF No. 33.) However, Plaintiffs attempt to utilize the immigration documents here to demonstrate that Tang's alleged immigration fraud is a predicate act of a general widespread scheme committed against Plaintiffs and other entities and individuals. (*See e.g.* ECF No. 78-7 at 3-4) ("Tang came to this Court to seek help to hide her criminal tracks in hope that the court would be easily duped like she has duped so many Chinese investors and lenders in her life long career as a professional fraudster"). But there is no relation between the two — the immigration fraud involving Tang, Tang's ex-husband, and her relatives occurred decades prior to the case's inception and does not remotely involve Plaintiffs. (*See* ECF No. 76-2) (stating that the petition for Tang to obtain permanent residency is dated 1996). Further, Plaintiffs have not demonstrated how Tang's scheme has injured Plaintiffs.[1] *See Jus Punjabi, LLC v. Get Punjabi, Inc.,* No. 14-cv-3318 (GHW), 2015 U.S. Dist. LEXIS 66006, (S.D.N.Y. May 20, 2015) (dismissing claim of visa, passport, and permit fraud for failure to allege that defendants engaged in acts related to that

---

[1] Although Plaintiffs need not "demonstrate [an] injury to [themselves] from *each and every* predicate act making up the RICO claim" the predicate acts must be "sufficiently serious in dimension and degree, both qualitatively and quantitatively, not only to cause the private injury the victim claims, but to produce some public harm or pose a societal threat that extends beyond the narrow interests of a few victims." *See Javier v. Beck,* No. 13-cv-2926, 2014 U.S. Dist. LEXIS 95594, at *22-23 (S.D.N.Y. July 3, 2014) (alleging that defendants "induced *hundreds* of other non-immigrant healthcare workers to sign contracts with large confessions of judgment and submitted fraudulent immigration documents on behalf of those workers" over more than a decade) (emphasis added). Thus, even if Plaintiffs have not alleged a private harm, Plaintiffs cannot establish a public harm or societal threat associated with the alleged visa fraud here.

7

fraud); *cf. Carmen v. Health Carousel, LLC,* No. 20-cv-313, 2023 U.S. Dist. LEXIS 139403, at *35-36 (S.D. Ohio Aug. 9, 2023) (finding that defendant committed visa fraud when it persuaded plaintiffs to immigrate to get them into the country and subsequently underpay plaintiffs and take the money for themselves).  Instead, Plaintiff Zou merely states in his declaration submitted in opposition to Defendant's instant motion that he and his mother gave Tang millions of dollars because they trusted her and did not know of her "criminal past."  (ECF No. 78-7 at 4.)

*Second*, the documents requested are from 1996.  Plaintiffs have not alleged *any* related acts that occurred between 1996 and 2006.  18 U.S.C. § 1961(5) (stating that predicate acts must have occurred within ten years of each other).  Notably, the other alleged acts of immigration fraud[2]  mentioned in the operative complaint either occurred at an unknown time or much later than 2006: on an unknown date, Tang allegedly smuggled in her niece, Jing Jing, into the United States (ECF No. 33 at ¶ 85); beginning in 2016, Tang attempted to solicit green card investors by trying to get them to buy an apartment unit from her for $500,000 along with "investment green cards" (*id.* at ¶ 87); and around 2021, Tang helped bring her friend's fiancée to the United States from China in exchange for money (*id.* at ¶ 86).

---

[2] An individual or entity commits visa fraud when they

> knowingly make[] under oath, or knowingly subscribe[] as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact shall be guilty of visa fraud. Visa fraud has five elements: the defendant (1) knowingly (2) presented (3) an application or document required by the immigration laws (4) that contained a false statement (5) as to a material fact. A falsehood is material if it has a natural tendency to influence the decisions of the decision maker.

*See Guzman v. Hecht,* No. 18-cv-3947(DLC), 2019 U.S. Dist. LEXIS 48193, at *15 (S.D.N.Y. Mar. 22, 2019) (citing 18 U.S.C. § 1546(a)).

8

*Finally*, and perhaps most importantly, in their opposition, Plaintiffs do not cite *any* legal authority to support their statement that they are "entitled to see [Tang's] fraudulent immigration documents to support additional RICO predicate acts." (ECF No. 78 at 4.)

Accordingly, Defendant's motion to quash the USCIS subpoena is granted.[3]

## II.  Motion to "So Order" the H&R Block Subpoena

Plaintiffs issued a subpoena to non-party H&R Block for the production of Defendant Tang's, Travelhome LLC's, and TL403 LLC's tax returns from 2015 to 2023. (ECF No. 84.) H&R Block states that they cannot produce tax returns and preparation materials unless it receives a court order or unless Defendant Tang signs the authorizations herself. (*Id.*) Tang, however, declined to sign any authorization forms and the nonparty entities have not taken a position on the matter.

Plaintiffs state that the requested information is relevant and necessary, not overbroad, and not unduly burdensome. (ECF No. 84 at 1.) They state that the tax returns are relevant to determine whether Tang transferred funds out of JLK LLC's account and into Travelhome's and TL403's accounts to pay personal expenses and to demonstrate that JLK was funded through Travelhome and TL403 since the bank denied credit to JLK. (*See* ECF No. 84-1 at 2, 4; ECF No. 84-2.) Specifically, Plaintiffs seek "to find out whether Tang and her two above named companies have had $3.5 million [] combined incomes to fund JLK, LLC." (ECF No. 84 at 2.) Secondly, the information sought is not overbroad given that "Tang has sworn to that period of time as the relevant period of time." (*Id.*) Finally, Plaintiffs will shoulder the costs, so there is no financial harm upon Defendant Tang. (*Id.*)

---

[3] In light of the undersigned granting the motion to quash, the parties' other arguments are not considered.

9

Defendant Tang opposes, asserting that the requested tax returns of Defendant and the two nonparties are protected from disclosure unless there is a court order. (ECF No. 85 at 1.) Further, according to Tang, Plaintiffs have not met their burden in demonstrating the relevance or compelling need for the documents. (*Id.* at 2.) Defendant notes that bank statements are more critical than tax statements which do not show "amount of money in the account and deposits, withdrawals, transfers, and payees." (*Id.*) Even so, Plaintiffs already have the bank statements.

"Although income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns." *Caputi v. Topper Realty Corp.,* No. 14-cv-2634 (JFB) (SIL), 2015 U.S. Dist. LEXIS 24969, at *4 (E.D.N.Y. Feb. 25, 2015) (internal citations omitted). "[A] party seeking the production of tax returns must satisfy a two-part test: (1) the tax returns must be relevant to the subject matter of the action, and (2) a compelling need must exist because the information is not readily obtainable from a less intrusive source." *Grabis v. Navient Sols., LLC (In re Grabis),* Nos. 13-10669-JLG, 15-01420-JLG, 2018 Bankr. LEXIS 3665, at *40 (Bankr. S.D.N.Y. Nov. 20, 2018) (citing *Sadofsky v. Fiesta Prods., LLC,* 252 F.R.D. 143, 150 (E.D.N.Y. 2008)). The burden is on the movant to fulfill both prongs of this test. *See Agerbrink v. Model Serv. LLC,* No. 14-cv-7841, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017).

A "compelling need does not exist where the requesting party is in possession of financial documents from which the information sought may be obtained readily, even where the requesting party may need to compile numerous records in its possession to ascertain the information sought from the tax returns." *Grant v. HER Imps. NY, LLC*, No. 15-CV-5100 (DLI) (LB), 2017 U.S. Dist. LEXIS 229499, at *10 (E.D.N.Y. Mar. 20, 2017). "Depositions have been

10

considered a less intrusive source for obtaining such information." *Id*. "The fact that certain information may be accessible more easily from an adversary's tax returns than from depositions or other financial documents does not, without more, constitute a compelling need." *Id*.

Plaintiffs have not met their burden. Plaintiffs have failed to establish what, if any, value Plaintiffs will receive from attaining the tax statements. In *Kreidler v. Pixler*, No. C06-0697 (RSL), 2007 U.S. Dist. LEXIS 82459, at *4-5 (W.D. Wash. Oct. 17, 2007), the court granted plaintiff's request and directed defendants to produce tax returns and financial records, emphasizing that the *financial documents*—not the tax returns—would "assist plaintiff in tracing the funds" and were "relevant to plaintiff's claims for fraud, criminal profiteering, unjust enrichment, and constructive trust." Here, and similar to *Kreidler,* the bank statements *already received* by Plaintiffs' counsel would provide the appropriate information Plaintiffs request—that is, whether Defendant Tang's companies siphoned monies in and out of JLK, LLC and had a certain amount of income at a particular point in time. *See Caputi,* 2015 U.S. Dist. LEXIS 24969, at *5 (denying motion to compel tax returns where movant failed to demonstrate relevance since non-movant already disclosed W-2s for the relevant time period and there was no other relevant information movant could retrieve from the requested tax returns); *Bhatt v. Patel,* No. 18-CV-2063 (ILG) (SJB), 2020 U.S. Dist. LEXIS 262800, at *10 (E.D.N.Y. Oct. 19, 2020) (granting motion to quash where it was unclear how a non-party's tax return could shed light on plaintiff's hours' worked or wages in a wage and hour violations case); *cf. State Farm Mut. Auto. Ins. Co. v. Fayda,* No. 14-cv-9792 (WHP) (JCF), 2015 U.S. Dist. LEXIS 162164, at *15 (S.D.N.Y. Dec. 3, 2015) (allowing disclosure of tax returns subject to a protective order where plaintiff demonstrated relevance and defendants did not attempt to show alternative sources of information).

11

Even if the information is not attainable through the bank statements already in their possession, Plaintiffs can still obtain the requested information through deposition testimony. *See Roytlender v. D. Malek Realty, LLC.*, No. 21-cv-00052 (MKB) (JMW), 2022 U.S. Dist. LEXIS 183438, at *17-18 (E.D.N.Y. Oct. 6, 2022) (finding that defendants did not demonstrate a compelling need for tax returns because the information was available through bank records already in its possession and via pointed questions at deposition).

Given Plaintiffs' failure to establish a compelling need here, Plaintiff's motion to have the court "so order" the H&R Block subpoena is denied.

## CONCLUSION

Based on the foregoing, Defendant's motion to quash the USCIS subpoena (ECF No. 76) is granted and Plaintiff's motion for discovery to So Order the H&R Block subpoena (ECF No. 84) is denied.

Dated: Central Islip, New York
       May 16, 2024

S O  O R D E R E D:

/S/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge